**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEO SHUMACHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. _____ |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| SQUARE, INC., RANDY GARUTTI, ) | |
| MARY MEEKER, LAWRENCE ) | |
| SUMMERS, DARREN WALKER, ) | |
| JACK DORSEY, DAVID VINIAR, ) | |
| PAUL DEIGHTON, ANNA ) | |
| PATTERSON, ROELOF BOTHA, ) | |
| JAMES MCKELVEY, AMY BROOKS, ) | |
| and SHAWN CARTER, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Leo Shumacher ("Plaintiff"), on behalf of himself and upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.     This action arises from a proposed transaction (the "Transaction") through which Square, Inc. ("Square" or the "Company") will acquire Afterpay Limited ("Afterpay") through Square's subsidiary Lanai (AU) 2 Pty Ltd. ("Merger Sub").

2.     On August 1, 2021, Square and Afterpay issued a joint press release announcing that they had entered into a Scheme Implementation Deed dated August 2, 2021 (the "Merger Agreement") to sell Afterpay to Square. Under the terms of the Merger Agreement, each share of Afterpay common stock will be converted into the right to receive either: (i) 0.375 shares of Square

Class A common stock, or (ii) 0.375 CHESS Depositary Interests representing ownership interest in shares of Square Class A common stock issued by Square pursuant to a Deed Poll to be executed by Square and Merger Sub in favor of all Afterpay shareholders. The Transaction is valued at approximately $29 billion.

3.      On October 5, 2021, Square filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Square stockholders vote in favor of the Transaction, omits or misrepresents material information concerning, among other things: (i) the background of the Transaction; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"). Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      The Proxy Statement omits material information with respect to the Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Square.

9.     Defendant Square is a Delaware corporation, with its principal executive offices located at 1455 Market Street, Suite 600, San Francisco, CA 94103. The Company mostly focuses on financial services and digital payments.

10.     Defendant Randy Garutti ("Garutti") has been a director of the Company since July 2017.

11.     Defendant Mary Meeker ("Meeker") has been a director of the Company since June 2011.

12.     Defendant Lawrence Summers ("Summers") has been a director of the Company since June 2011.

13.     Defendant Darren Walker ("Walker") has been a director of the Company since June 2020.

14.     Defendant Jack Dorsey ("Dorsey") is co-founder of the Company and Chairman of the Board of Directors, and has been President, Chief Executive Officer, and a director since July 2009.

15.     Defendant David Viniar ("Viniar") is Lead Independent Director and has been a director of the Company since October 2013.

16.     Defendant Paul Deighton ("Deighton") has been a director of the Company since

May 2016.

17.     Defendant Anna Patterson ("Patterson") has been a director of the Company since November 2017.

18.     Defendant Roelof Botha ("Botha") has been a director of the Company since January 2011.

19.     Defendant James McKelvey ("McKelvey") is co-founder of the Company and has been a director since July 2009

20.     Defendant Amy Brooks ("Brooks") has been a director of the Company since October 2019.

21.     Defendant Shawn Carter ("Carter") has been a director of the Company since May 4, 2021.

22.     Defendants identified in paragraphs 10-21 are collectively referred to herein as the "Individual Defendants."

## FACTUAL BACKGROUND

**Background of the Company and the Transaction**

23.     Square was founded in 2009 to enable businesses (sellers) to accept card payments, an important capability that was previously inaccessible to many businesses. As Square grew, it recognized that sellers need a variety of solutions to thrive and saw how it could apply its strength in technology and innovation to help them. Square has since expanded to provide more than 30 distinct products and services to sellers that help them manage and grow their business. Similarly, with Cash App, Square has built a parallel ecosystem of financial services to help individuals manage their money. That includes ways for individuals to invest in stocks and bitcoin, receive their paycheck, tax return, and direct deposit up to two days early, and use Cash Card, a free,

customizable debit card to pay online and in stores. With TIDAL, Square's global music and entertainment platform, Square believes it can provide artists tools to participate in the economy and grow as entrepreneurs. And finally, Square recently announced a fourth business, TBD, focused on building an open developer platform with the goal of making it easy to create non-custodial, permissionless, and decentralized financial services.

24.     On August 1, 2021, Square and Afterpay issued a joint press release announcing that they had entered into the Merger Agreement. According to the press release announcing the Transaction:

> Square, Inc. (NYSE: SQ) and Afterpay Limited (ASX: APT) today announced that they have entered into a Scheme Implementation Deed under which Square has agreed to acquire all of the issued shares in Afterpay by way of a recommended court approved Scheme of Arrangement. The transaction has an implied value of approximately US$29 billion (A$39 billion) based on the closing price of Square common stock on July 30, 2021, and is expected to be paid in all stock. The acquisition aims to enable the companies to better deliver compelling financial products and services that expand access to more consumers and drive incremental revenue for merchants of all sizes. The closing of the transaction is expected in the first quarter of calendar year 2022, subject to the satisfaction of certain closing conditions outlined below. "Square and Afterpay have a shared purpose. We built our business to make the financial system more fair, accessible, and inclusive, and Afterpay has built a trusted brand aligned with those principles," said Jack Dorsey, Co-Founder and CEO of Square. "Together, we can better connect our Cash App and Seller ecosystems to deliver even more compelling products and services for merchants and consumers, putting the power back in their hands." Afterpay, the pioneering global 'buy now, pay later' (BNPL) platform, will accelerate Square's strategic priorities for its Seller and Cash App ecosystems. Square plans to integrate Afterpay into its existing Seller and Cash App business units, enable even the smallest of merchants to offer BNPL at checkout, give Afterpay consumers the ability to manage their installment payments directly in Cash App, and give Cash App customers the ability to discover merchants and BNPL offers directly within the app.
>
>                                          ***
>
> **Transaction Terms**
>
> Under the terms of the Scheme Implementation Deed, which has been approved by the members of the Boards of Directors of both Square and Afterpay, Afterpay shareholders will receive a fixed exchange ratio of 0.375 shares of Square Class A common stock for each Afterpay ordinary share they hold on the record date.

Square may elect to pay 1% of total consideration in cash. Square has agreed to establish a secondary listing on the Australian Securities Exchange (ASX) to allow Afterpay shareholders to trade Square shares via CHESS Depositary Interests (CDIs) on the ASX. Afterpay shareholders will be able to elect whether to receive the scheme consideration in NYSE listed Square Class A common stock or CDIs. The CDIs listed on the ASX are expected to be eligible for S&P index inclusion in Australia. Based on Square's closing price of US$247.26 on July 30, 2021, this represents an implied transaction price of approximately A$126.21 per Afterpay share, a premium of approximately 30.6% to Afterpay's latest closing price of A$96.66. This represents an approximate 21.9% premium over the 10-day volume weighted average Afterpay share price, and an approximate 10.5% premium over the 30-day volume weighted average Afterpay share price, each as of July 30, 2021. Following completion of the transaction, Afterpay shareholders are expected to own approximately 18.5% of the combined company on a fully diluted basis. The transaction is subject to conditions precedent as is customary for transactions of this nature, including, among other things, receipt of required regulatory approvals and the approval of shareholders of both companies.

**Advisors**

Morgan Stanley & Co. LLC is serving as financial advisor to Square and Wachtell, Lipton, Rosen & Katz and King & Wood Mallesons are serving as its legal advisors. Goldman Sachs and Qatalyst Partners are serving as financial advisors to Afterpay, Highbury Partnership is serving as financial advisor to Afterpay's Board and Gilbert + Tobin and Cravath, Swaine & Moore LLP are serving as Afterpay's legal advisors.

**The Proxy Statement Contains Material Omissions**

25.     On October 5, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Transaction.

26.     As set forth below, the Proxy Statement omits material information.

27.     First, the Proxy Statement fails to disclose material information concerning the background of the Transaction.

28.     Specifically, the Proxy Statement fails to disclose sufficient information concerning the number and nature of all confidentiality agreements entered into between Square and any interested third party during the sales process, as well as whether any agreement contained "don't-

ask, don't waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

29.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Transaction.

30.     Second, the Proxy Statement fails to disclose material information regarding the financial analyses performed by Morgan Stanley. The Proxy Statement describes Morgan Stanley's fairness opinion and the analyses supporting that opinion. That description, however, omits key inputs and assumptions underlying these analyses. Without this information, as described below, Square's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Transaction or seek appraisal.

31.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

32.     Regarding Morgan Stanley's Public Trading Comparables Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies selected for the analysis.

33.     Regarding Morgan Stanley's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the levered free cash flows for both Square and Afterpay used in the analyses; (ii) the range of terminal values calculated for each of the projection cases utilized in the analysis; and (iii) the inputs and assumptions underlying Morgan Stanley's use of the discount rates ranging from 8.0% to 10.0% for Afterpay and 10.0% to 12.0% for Square.

34.     Regarding Morgan Stanley's Precedent Transactions Premia analysis, the Proxy

Statement fails to disclose: (i) the transactions observed; and (ii) the premiums paid in each transaction.

35.     Regarding Morgan Stanley's Equity Research Analysts' Future Price Targets Analysis, the Proxy Statement fails to disclose: (i) the observed price targets; and (ii) the sources of the observed price targets

36.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

37.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Square**

38.     Plaintiff repeats all previous allegations as if set forth in full.

39.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

40.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the background of the Transaction, and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements

41.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Transaction or seek to exercise their appraisal rights.

42.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

43.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

44.     Plaintiff repeats all previous allegations as if set forth in full.

45.     The Individual Defendants acted as controlling persons of Square within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Square and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Transaction.  They were thus directly involved in the making of the Proxy Statement.

48.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Preliminarily and permanently enjoin defendants, and all persons acting in concert with them from proceeding with, consummating or closing the Transaction;

B.     In the event defendants consummate the Transaction, rescind and set it aside or award rescissory damages;

C.     Direct the Individual Defendants to disseminate a supplemental or amended Proxy Statement that does not contain untrue statements of material fact and that states all material facts necessary to make the statements contained therein not misleading;

D.     Declare that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as

well as Rule 14a-9 promulgated thereunder;

E.     Award Plaintiff all attorneys' fees, expert fees, and expenses incurred in

prosecuting this action; and

F.     Award all other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  October 25, 2021                    **GRABAR LAW OFFICE**

By:    _Joshua H. Grabar_
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

**C.O. LAW, APC**
Clark Ovruchesky
2404 Broadway, Suite 150
San Diego, CA 92102
619-356-8960
co@colawcalifornia.com

*Counsel for Plaintiff*